**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVANS ET AL,

        Plaintiffs,

        v.

LINDEN RESEARCH, INC. ET AL,

        Defendants.

_____/

No. C-11-01078 DMR

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

      Plaintiff Naomi Hemingway moves for preliminary approval of a class action settlement. [Docket No. 113.]  Defendants Linden Research, Inc. and Philip Rosedale do not oppose the motion. [Docket No. 116.]  The court conducted a hearing on this matter on June 27, 2013 and ordered Plaintiff to submit supplemental information in support of the motion and to amend certain provisions of the settlement agreement, class notice, and claim form.  Plaintiff filed the requested information on August 20, 2013.  [Docket No. 121.]  The court then ordered Plaintiff to file additional information in support of the motion, addressing errors in Plaintiff's previous submissions.  [Docket No. 124.]   On October 21, 2013, Plaintiff filed the requested information. [Docket No. 125.]  On October 23, 2013, the court ordered Plaintiff to submit a fully-executed revised settlement agreement, which Plaintiff filed on October 24, 2013.  [Docket Nos. 126, 127.] For the following reasons, the court GRANTS Plaintiff's motion.

**I.  Background**

**United States District Court**
For the Northern District of California

**A.     Litigation History**

This certified class action involves the internet role-playing virtual world entitled Second Life.  In Second Life, participants create characters called avatars to represent themselves and to interact with other avatars in a huge virtual world.  Participants establish reputations, run and patronize businesses, and buy and sell virtual items such as clothing, cars, and homes (referred to as "virtual items").  They also purchase and sell pieces of "virtual land" from Defendant Linden Research, Inc. ("Linden"), which operates Second Life, and other participants.  Participants use in-game money, known as "lindens" or "Linden dollars" to perform in-world monetary transactions. The linden currency can be purchased with, as well as exchanged into, U.S. dollars.

In April 2010, Plaintiffs Carl Evans, Donald Spencer, Valerie Spencer, and Cindy Carter, individuals who have participated in Second Life, filed suit in the U.S. District Court for the Eastern District of Pennsylvania alleging that they purchased virtual items and/or virtual land and subsequently had their accounts unilaterally terminated or suspended by Linden, and were not compensated for the value of the virtual land, items, and/or currency in their accounts.  On March 14, 2011, the case was transferred to this District.  Plaintiffs' Second Amended Complaint, filed in February 2012, added Naomi Hemingway as a plaintiff and further asserted that Defendants made false representations about ownership of virtual land and virtual items, and wrongfully confiscated virtual land and items from them.[1]  Plaintiffs moved to certify two proposed classes, "Main Class" and "Subclass A," and on November 20, 2013, the court granted in part and denied in part Plaintiffs' motion.  [Docket No. 107 (Order on Mot. for Class Cert.).]  The court denied Plaintiffs' motion to certify the Main Class, consisting of all current and former owners, purchasers, creators or sellers of virtual land or virtual items in Second Life since November 2003.[2]  The court granted the motion to certify the proposed Subclass A to proceed on claims for conversion, intentional interference with

---

[1] The second amended complaint also removed Ms. Carter as a plaintiff.

[2] The gist of the Main Class claims was that "Defendants . . . lured class members into participating in Second Life by making false promises that the participants would actually 'own' their virtual land and items, and then later reneged on those promises."  (Order on Mot. for Class Cert. 6.)

**United States District Court**
For the Northern District of California

contractual relations and prospective economic advantage, and unjust enrichment, certifying a class as follows:

> All persons whose assets, including virtual items, virtual land, and/or currency in lindens and/or U.S. dollars, have been deliberately and intentionally converted by Defendant Linden's suspension or closure of their Second Life accounts.

The court also appointed Plaintiff Hemingway as class representative and appointed Jason Archinaco and Robert Bracken of Archinaco/Bracken, LLC and Michael Aschenbrener of Aschenbrener Law, P.C. Class Counsel.

The parties participated in a mediation before the Hon. James Ware (Ret.) on January 21, 2013, and continued negotiating after the mediation was concluded on that day. (Aschenbrener Decl., May 23, 2013, ¶¶ 2-5.) The parties agreed to a settlement of the action in March 2013 and executed a settlement agreement on May 17, 2013. (Aschenbrener Decl., ¶¶ 6, 7.) Plaintiff Hemingway filed an unopposed motion for preliminary approval of the settlement on May 23, 2013. [Docket No. 113.] The court held a hearing on the motion on June 27, 2013 and deferred ruling on the motion pending the parties' submission of supplemental information and a revised class notice and claim form. On August 20, 2013, Plaintiff filed the requested information and revisions. [Docket No. 121.] On October 1, 2013, the court ordered Plaintiff to file additional information in support of the motion, addressing errors in Plaintiff's previous submissions. [Docket No. 124.] On October 21, 2013, Plaintiff filed the requested information, including a revised amended settlement agreement. [Docket No. 125.] However, Plaintiffs did not submit a fully-executed version of the agreement. Therefore, on October 23, 2013, the court ordered Plaintiff to submit a fully-executed revised settlement agreement, which Plaintiff filed on October 24, 2013. [Docket Nos. 126, 127.]

**B.      The Settlement Agreement**

The complete terms of the proposed settlement agreement are set forth in the Revised Amended Settlement Agreement and Release ("Revised Agreement"). [Docket No. 125-1 (Revised Agreement).] The Revised Agreement provides for a single settlement class consisting of

> all persons whose assets, including virtual items, virtual land, and/or currency in lindens and/or U.S. dollars, have been deliberately and intentionally converted by

**United States District Court**
For the Northern District of California

Defendant Linden's suspension or closure of their Second Life accounts on or after April 16, 2008.[3]

(Revised Agreement § 1.7.)[4]

### 1. Settlement Amount

The settlement provides that Defendant Linden will make payments to class members as follows. First, Linden will return up to 100% of the U.S. dollar balances in class members' accounts by transmitting the funds to class members' PayPal accounts within ten days of Linden verifying the validity of each class member's claim. As of August 20, 2013, the date of the amended settlement agreement, the total of such funds is approximately $24,236.90. (Revised Agreement § 3.1(D)(1).)

Next, Linden will return up to 100% of the Linden dollar balances in class members' accounts. To accomplish this, Linden will list the Linden dollars on the official Second Life currency exchange and transmit the converted U.S. dollars within ten days of the sale, and will waive Second Life's commission on the conversions. As of the date of the Revised Agreement, the total of such funds was approximately L$43,337,311, with an exchange rate of approximately 252 Linden dollars to one U.S. dollar, for an approximate value of $171,973.46. (Revised Agreement §3.1(D)(2).)

With respect to virtual land, Linden will pay two Linden dollars per square meter of virtual land held by class members. As of the date of the Revised Agreement, the total amount of virtual land is 275,872 square meters. Defendants will waive Second Life's commission on the exchanges and will transmit the value of the Linden dollars, converted to U.S. dollars, within ten days of Linden verifying the validity of each class member's claim. By the court's own calculations, the total U.S. dollar value of such virtual land is approximately $2,189 (275,872 x L$2 / 252). In

---

[3] At the court's request, the parties revised the settlement agreement's definition of the class to reflect the applicable statutes of limitations for the certified class claims. An action for conversion must be brought within three years. *See* Cal. Code of Civ. Proc. § 338(c). Claims for intentional interference with contractual relations and prospective economic advantage and unjust enrichment must be brought within two years of the alleged wrongdoing. *See* Cal. Code of Civ. Proc. § 339(1).

[4] For clarity, the parties revised their settlement agreement to include a provision that persons in the proposed Main Class, which was not certified, are *not* "Class Members" as defined in the Amended Agreement unless such persons are *also* members of the certified class, Subclass A. (Am. Agreement § 1.11.)

4

United States District Court

For the Northern District of California

1    addition, Linden will refund a $1,000 setup fee to the class member who possessed a virtual island.

2    (Revised Agreement § 3.1(D)(3).)

3         Finally, regarding virtual items, Linden will offer class members making valid claims the

4    choice of (a) $15 per class member (not account) whose account(s) contains virtual items,

5    transmitted by Linden to his or her PayPal account within ten days of Linden verifying the validity

6    of the claim; or (b) the class members may attempt to sell their virtual items on the Second Life

7    Marketplace, and Linden will waive Second Life's commission on the sales.  Those class members

8    who elect the second option will be entitled to all proceeds of the sales.  (Revised Agreement §

9    3.1(D)(4).)

10                            **2.    Class Notice**

11        The Amended Agreement provides for multiple notice distribution methods.  Starting no

12   later than thirty days after entry of the preliminary approval order, the class administrator will begin

13   transmitting by email the class notice to the email address of record provided to Linden for each

14   class member account.[5]  The class administrator will have up to and including sixty days after the

15   entry of the preliminary approval order to complete the email notice.  (Revised Agreement § 5.4(B).)

16   The class administrator will also design and maintain a settlement website which will contain the

17   operative complaint, the Amended Agreement, and long form notice and opt-out form, as well as

18   other important information, including contact information for the class administrator.  The website

19   will remain active until at least ninety days after the date the court enters the final order and

20   judgment in this action and either the time to appeal has expired or any appeal has been resolved.

21   (Revised Agreement § 5.4(B); *see also* § 1.17 (defining effective date of settlement).)  Additionally,

22   the class administrator will publish the class notice online for thirty days, starting no later than thirty

23   days after entry of the preliminary approval order.  The publication notice will appear on six

24   websites whose readers are correlated with visits to Second Life.  In addition, notice will appear on

25

26        [5] According to the class administrator, Linden has identified approximately 57,000 e-mail
27   addresses for class members, "representing substantially all of the Class." (Simmons Decl. Oct. 4, 2013,
     ¶ 17.)  However, as explained by counsel at the preliminary approval hearing, one class member may
28   have many separate accounts.  As a result, the number of class members is likely far less than 57,000.
     Class  Counsel could provide no estimate of the number of class members.

**United States District Court**
For the Northern District of California

Facebook targeting individuals who have expressed an interest in Second Life. (Simmons Decl. Oct. 4, 2013, ¶ 24.) The online notices will be directly linked to the settlement website. (Simmons Decl. ¶ 26.) This notice will be supplemented with sixty days of online banner advertising on the Alphaville Herald, a website dedicated to Second Life. (Simmons Decl. ¶¶ 24, 25; Revised Agreement § 5.4(C).)

### 3.    Claims Procedure

To receive a payment, each class member must submit an online claim form to the class administrator who will submit them to Linden for review and processing. (Revised Agreement § 3.1(A).) The claim period will run until thirty days after the final approval hearing. (Revised Agreement § 1.5.)

### 4.    Settlement Administration Costs

In addition to the relief described above, Linden will pay up to $50,000 for notice and administration costs. (Revised Agreement § 3.3.) The class administrator estimates the proposed notice plan will cost $49,818. (Simmons Decl. ¶ 35; Ex. C.) In the event notice and administration costs exceed $50,000, the balance will be paid out of class counsel's fee award. If notice and administration costs are less than $50,000, the balance will be returned to Linden. (Revised Agreement § 3.3.)

### 5.    Class Representative Enhancement Payment

In addition to the relief afforded all class members, the Revised Agreement authorizes class representative Naomi Hemingway to seek an incentive payment of up to $10,000. (Revised Agreement § 10.2.)

### 6.    Attorneys' Fees and Costs

The Revised Agreement authorizes class counsel to apply to the court for an award of attorneys' fees and expenses up to $175,000. The payment of attorneys' fees and expenses is separate from and in addition to the other relief afforded the class members. (Revised Agreement § 10.1.) Further, "[i]t is not a condition of [the settlement] that any particular amount of attorneys' fees, costs or expenses . . . be approved by the Court, or that such fees, costs, [or] expenses be approved at all." (Revised Agreement § 10.1.)

**United States District Court**
For the Northern District of California

### 7.    Released Claims

The Revised Agreement provides that class members will release all claims up to the date of the preliminary approval order arising out of the subject matter giving rise to the claims in this action.  (Revised Agreement §§ 1.31, 9.)  The release applies to each class member who does not timely submit a request for exclusion.  In addition, by the terms of the Revised Agreement, the release does not apply to persons in the proposed Main Class who are not also members of the certified class, Subclass A.  (*See* Revised Agreement § 1.31 (defining "class member").)

## II.  Discussion

### A.    Preliminary Fairness Determination

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also* Fed. R. Civ. P. 23(e) (court may only approve class action settlement based on finding that settlement is "fair, reasonable, and adequate.").  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the court must balance a number of factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; and the experience and views of counsel.  *Staton*, 327 F.3d at 959.  In making this evaluation, the court is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Officers for Justice*, 688 F.2d at 625.  "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by

1    each individual case." *Id.* Further, as some of these factors cannot be fully assessed until the court

2    conducts its final fairness hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v.*

3    *GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quotation marks and citation omitted).

4    Preliminary approval of a settlement and notice to the class is appropriate if "the proposed

5    settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious

6    deficiencies, does not improperly grant preferential treatment to class representatives or segments of

7    the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.

8    Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (2d

9    ed. 1985)).

10          Here, the factors set forth in *In Re Tableware Antitrust Litigation* weigh in favor of

11    preliminarily approving the settlement. First, the parties participated in private mediation, which

12    "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P.*

13    *Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21,

14    2012). Second, there are no obvious deficiencies, as under the Second Amended Agreement,

15    Defendants will provide 100% restitution of U.S. Dollars and Lindens remaining in class member

16    accounts that were closed or suspended by Defendants. The strength of the class claims regarding

17    conversion of virtual items or land in accounts closed by Defendants is debatable; the value of the

18    settlement of those class claims fairly reflects the inherent risks in going forward on those claims.

19    There is no indication that the settlement improperly grants preferential treatment to class

20    representatives or segments of the class. The parties arrived at the settlement after several years of

21    litigation, after substantial discovery was completed, and after class certification, and the parties

22    clearly contemplated the risk, expense, and delay posed by continued litigation. The court finds that

23    the settlement appears to fall within the range of possible approval.

24          Notwithstanding the foregoing, the court has some concern regarding Plaintiff's anticipated

25    request for an incentive payment of up to $10,000, which is double the amount which is

26    presumptively reasonable in this District. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins.*

27    *Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a

28    request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is

United States District Court
For the Northern District of California

1   presumptively reasonable.").  The Ninth Circuit has noted that plaintiffs who receive large incentive

2   awards in addition to their share of the recovery "may be tempted to accept suboptimal settlements

3   at the expense of the class members whose interests they are appointed to guard," and become "more

4   concerned with maximizing those incentives than with judging the adequacy of the settlement as it

5   applies to class members at large."  *Staton*, 327 F.3d at 975, 977 (quotation marks and citation

6   omitted).  Ultimately, the court need not resolve the matter at the preliminary approval stage, since

7   the request will be finally determined at the fairness hearing, and the court finds that the award

8   authorized by the Revised Agreement does not necessarily render the settlement unfair or

9   unreasonable.

10          **B.       Class Notice**

11          The court next considers the sufficiency of the parties' notice plan.  Where a proposed

12  settlement has been reached by the parties, the "court must direct notice in a reasonable manner to

13  all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The court must

14  ensure that the parties' notice plan provides for "the best notice that is practicable under the

15  circumstances, including individual notice to all members who can be identified through reasonable

16  effort" and that the notice itself explains in easily understood language the nature of the action,

17  definition of the class, class claims, issues and defenses, ability to appear through individual

18  counsel, procedure to request exclusion, and the binding nature of the class judgment.  Fed. R. Civ.

19  P. 23(c)(2)(B).

20          Here, the parties propose a notice plan consisting of direct email notice, a settlement website,

21  and publication notice.  The parties have submitted the long-form notice, email notice, publication

22  notice, claim form, and request for exclusion form for the court's review.  ("Notice of Filing," Jun.

23  6, 2013, Ex. A [Docket No. 115-1] (long-form notice); Amended Agreement, Exs. 1-A (online claim

24  form); 1-B (request for exclusion); 1-C (email notice); 1-D (publication notice) [Docket No. 121-1 at

25  22-32].)  The parties propose emailing the email notice to the email address of record provided to

26  Linden for each class member's account.  The email notice will provide the address of the settlement

27  website which will contain the long-form notice, operative complaint, Revised Agreement, opt-out

28  form, and a P.O. Box and email address to contact the class administrator with questions.  The court

finds that the long-form, email, and publication notices adequately describe the nature of the action, summarize the terms of the settlement, identify the class and provide instruction on how to opt out and object, and set forth the proposed fees and expenses to be paid to Plaintiff's counsel and the class administrator in clear, understandable language.  In addition, the parties will supplement the email notice with publication notice, which will be achieved through thirty days of targeted internet publication on Facebook and other websites, plus sixty days of online banner advertising on the Alphaville Herald, a website dedicated to Second Life.  The court finds the parties' proposed notice procedure meets the standards of Rule 23.  *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2012 WL 2598819, at *4-5 (N.D. Cal. Jul. 5, 2012) (granting preliminary approval to settlement and approving notice plan of direct email notice, settlement website, and thirty-day publication notice).

### III.  Conclusion

For the reasons stated above, Plaintiff's Motion for Preliminary Approval of Class Action Settlement is GRANTED as follows:

1.    The Revised Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

2.    The court directs emailing of the email notice in accordance with the implementation schedule set forth in Plaintiff's motion for preliminary approval of the class action settlement.  (*See* Mot. [Docket No. 113] at 11-12.)  The court also approves the notice plan as set forth in the Revised Agreement.

3.    A hearing on the final approval of the settlement will be heard on **February 27, 2014 at 11:00 a.m.**  Class Counsel's motion for an award of attorneys' fees and costs must be filed no later than 35 days before the final approval hearing.

4.    Any member of the settlement class who desires exclusion therefrom must mail, by the date set forth in the class notice, the opt-out form to the address set forth in the class notice.  All persons who properly submit a completed opt-out form shall not be settlement class members and shall have no rights with respect to the settlement.

5.    Any member of the settlement class who does not request exclusion, and who files a timely objection to approval of the proposed settlement in compliance with the

United States District Court
For the Northern District of California

requirements of the Amended Agreement, may appear at the final approval hearing in person or through counsel to show cause why the proposed settlement should not be approved as fair, reasonable, and adequate.

IT IS SO ORDERED.

Dated:  October 25, 2013



DONNA M. RYU
United States Magistrate Judge