UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANS ET AL,<br><br>  Plaintiffs,<br><br>  v.<br><br>LINDEN RESEARCH, INC. ET AL,<br><br>  Defendants.<br>_____/ | No. C-11-01078 DMR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD [DOCKET NOS. 129, 130]** |

Plaintiff Naomi Hemingway moves for final approval of a class action settlement and for an award of attorneys' fees, costs, and a class representative incentive fee. [Docket Nos. 129 (Pl.'s Mot for Final Approval), 130 (Pl.'s Fee Mot.).] Defendants Linden Research, Inc. and Philip Rosedale do not oppose the motions. [Docket No. 131.] The court conducted a Final Approval Hearing on February 27, 2014 and ordered Plaintiff to submit supplemental briefing, which Plaintiff timely filed. [Docket No. 135 (Suppl. Brief).] For the following reasons, the court grants final approval of the settlement agreement and grants in part Plaintiff's motion for attorneys' fees, costs, and an incentive award.

**I. Background**

This certified class action involves the internet role-playing virtual world entitled Second Life. In Second Life, participants create characters called avatars to represent themselves and to interact with other avatars in a huge virtual world. Participants establish reputations, run and

patronize businesses, and buy and sell virtual items such as clothing, cars, and homes (referred to as "virtual items"). They also purchase and sell pieces of "virtual land" from Defendant Linden Research, Inc. ("Linden"), which operates Second Life, and other participants. Participants use in-game money, known as "lindens" or "Linden dollars" to perform in-world monetary transactions. The linden currency can be purchased with, as well as exchanged into, U.S. dollars.

In April 2010, Plaintiffs Carl Evans, Donald Spencer, Valerie Spencer, and Cindy Carter, individuals who have participated in Second Life, filed suit in the U.S. District Court for the Eastern District of Pennsylvania alleging that they purchased virtual items and/or virtual land and subsequently had their accounts unilaterally terminated or suspended by Linden, and were not compensated for the value of the virtual land, items, and/or currency in their accounts. On March 14, 2011, the case was transferred to this District. Plaintiffs' Second Amended Complaint, filed in February 2012, added Naomi Hemingway as a plaintiff and further asserted that Defendants made false representations about ownership of virtual land and virtual items, and wrongfully confiscated virtual land and items from them.[1] Plaintiffs moved to certify two proposed classes, "Main Class" and "Subclass A," and on November 20, 2013, the court granted in part and denied in part Plaintiffs' motion. [Docket No. 107 (Order on Mot. for Class Cert.).] The court denied Plaintiffs' motion to certify the Main Class, consisting of all current and former owners, purchasers, creators or sellers of virtual land or virtual items in Second Life since November 2003.[2] The court granted the motion to certify the proposed Subclass A to proceed on claims for conversion, intentional interference with contractual relations and prospective economic advantage, and unjust enrichment, certifying a class as follows:

> All persons whose assets, including virtual items, virtual land, and/or currency in lindens and/or U.S. dollars, have been deliberately and intentionally converted by Defendant Linden's suspension or closure of their Second Life accounts.

---

[1] The second amended complaint also removed Ms. Carter as a plaintiff.

[2] The gist of the Main Class claims was that "Defendants . . . lured class members into participating in Second Life by making false promises that the participants would actually 'own' their virtual land and items, and then later reneged on those promises." (Order on Mot. for Class Cert. 6.)

2

The court also appointed Plaintiff Hemingway as class representative and appointed Jason Archinaco and Robert Bracken of Archinaco/Bracken, LLC and Michael Aschenbrener of Aschenbrener Law, P.C. as Class Counsel.

The parties participated in a mediation before the Hon. James Ware (Ret.) on January 21, 2013, and continued negotiating after the mediation was concluded on that day. (Aschenbrener Decl., May 23, 2013, ¶¶ 2-5.) The parties agreed to a settlement of the action in March 2013 and executed a settlement agreement on May 17, 2013. (Aschenbrener Decl., ¶¶ 6, 7.)

### A. Terms of the Settlement Agreement

The complete terms of the proposed settlement agreement are set forth in the Revised Amended Settlement Agreement and Release ("Revised Agreement"). [Docket No. 125-1 (Revised Agreement).] The Revised Agreement provides for a single settlement class consisting of

> all persons whose assets, including virtual items, virtual land, and/or currency in lindens and/or U.S. dollars, have been deliberately and intentionally converted by Defendant Linden's suspension or closure of their Second Life accounts on or after April 16, 2008.

(Revised Agreement § 1.7.)

The relevant terms of the settlement call for Linden to make payments to class members as follows: (1) payment of up to 100% of the U.S. dollar balances in class members' accounts (approximate value $24,236.90 (Revised Agreement § 3.1(D)(1)); (2) payment of up to 100% of the Linden dollar balances in class members' accounts (approximate value $171,973.46 (Revised Agreement §3.1(D)(2)); (3) payment of two Linden dollars per square meter of virtual land held by class members and refund of the $1,000 setup fee to the class member who possessed a virtual island (approximate value $3,189 (Revised Agreement § 3.1(D)(3)); (4) payment of $15 per class member (not account) whose account(s) contains virtual items or class members may attempt to sell their virtual items on the Second Life Marketplace, and Linden will waive Second Life's commission on the sales (approximate value $177,615 (Revised Agreement § 3.1(D)(4); Class Administrator Decl., Jan. 22, 2014, ¶ 20). In addition to the foregoing relief, the settlement also provides that (1) Linden will pay up to $50,000 for notice and administration costs (Revised Agreement § 3.3); (2) class representative Hemingway may seek an incentive payment of up to $10,000 (Revised Agreement §

1 10.2); and (3) class counsel may apply to the court for an award of attorneys' fees and costs up to
2 $175,000 (Revised Agreement § 10.1).

3     Linden agrees to make the payments described above in exchange for the class members
4 releasing all claims up to the date of the preliminary approval order arising out of the subject matter
5 giving rise to the claims in this action. (Revised Agreement §§ 1.31, 9.) The release applies to each
6 class member who does not timely submit a request for exclusion. In addition, by the terms of the
7 Revised Agreement, the release does not apply to persons in the proposed Main Class who are not
8 also members of the certified class, Subclass A. (*See* Revised Agreement § 1.31 (defining "class
9 member").)

### B. Notice to the Class

On October 25, 2013, the court granted Plaintiff's motion for preliminary approval of the settlement. [Docket No. 128.] Pursuant to the preliminary approval order, the class administrator sent the class notice by email to the email address of record provided to Linden for each class member account. After eliminating duplicate email addresses, the class administrator emailed the class notice to 12,886 email addresses. (Class Administrator Decl., March 13, 2014 ("Class Administrator Decl. II"), ¶¶ 21, 22.) The class administrator's email management system confirmed receipt of 6,609 emails, with the balance of the emails suppressed as duplicate, blocked by the recipient, or returned as undeliverable. (Class Administrator Decl. II ¶ 22.) The class administrator also implemented the parties' notice plan, which included creating and maintaining a settlement website containing pertinent and detailed information regarding the settlement, and notification via online publication and advertising. (Class Administrator Decl. ¶¶ 13, 15, 25-32.) The online, digital notice plan generated a total of 27,597,057 impressions, including 8,277,299 banner notices on websites that correlate with visits to secondlife.com and 19,319,758 notices on facebook.com on the profiles of individuals expressing an interest in Second Life. (Class Administrator Decl. II ¶¶ 31-35.)

As of March 10, 2014, the class administrator had received 284 claims, for a total claims rate of 4.3% based upon 6,609 emails delivered to class members. The claims period closed on March 29, 2014. (Class Administrator Decl. II ¶¶ 45-46.) The court received one objection to the

settlement. [Docket No. 132 (Lorrey Obj.).] On January 23, 2014, Plaintiff filed a motion for final approval of the settlement and for an award of attorneys' fees, costs, and a class representative incentive fee. On February 2, 2014, Defendants filed a statement of non-opposition to the motions. The court conducted a Final Approval Hearing on February 27, 2014 and ordered Plaintiff to submit supplemental briefing in support of the motion for final approval, which Plaintiff filed on March 13, 2014.

## II. Discussion

### A. Final Approval of Class Action Settlement

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without court approval. "If the proposal would bind class members, the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Approval under Rule 23 involves a two-step process: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City &Cnty. of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982). To assess a proposed settlement, courts balance the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Not all of these factors will apply to every class action settlement, and in certain circumstances, "one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525 (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993)). The district court's role in evaluating a proposed

settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009). It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. *Officers for Justice,* 688 F.2d at 625; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the judge] is exposed to the litigants and their strategies, positions, and proof." *Id.* (citation and quotation marks omitted).

### 2. Balancing of Factors

The court has evaluated the proposed settlement for overall fairness under the relevant factors and concludes that settlement is appropriate. The strength of the class claims regarding conversion of virtual items or land in accounts closed by Defendants is debatable, and the value of the settlement of those class claims fairly reflects the inherent risks in going forward on those claims. The amount offered in settlement provides real benefits to the class on a much shorter time frame than otherwise would be possible. Class members will receive 100% of the value of the U.S. dollars and Linden dollars in their accounts, as well as reimbursement for virtual land or items the class members owned. The parties reached the proposed settlement after more than three years of litigation, with substantial discovery completed as well as a contested class certification motion that resulted in defeat of certification of Plaintiff's main class. Based on the stage of the proceedings and the amount of investigation and formal discovery completed, the parties had developed a sufficient factual record to evaluate their chances of success at trial and the proposed settlement. Further, the settlement is the product of good faith, non-collusive, arms-length negotiations by experienced counsel after a mediation session before the Hon. James Ware (Ret.).

Further, the reaction of class members to the proposed settlement favors approval. The class notice was delivered to 6,609 email addresses and only one class member objected. As of approximately two weeks before the claims period closed, there were no opt-outs. A court may

6

appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. *See, e.g., Churchill Village*, 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of 150,000). While the court finds that a 4.3% response rate to the settlement is low, this response rate does not mean that the settlement, as a whole, is not fair, reasonable, and adequate. *See, e.g., Moore v. Verizon Commc'n Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). As class members' overall view of the settlement appears to be positive, on balance, the court concludes that the relevant factors weigh in favor of a finding that the settlement is fair, reasonable, and adequate.

### 3. Objection

In determining whether to finally approve a class action settlement, the court must consider whether there are any objections to the proposed settlement and, if so, the nature of the objections. Here, class member Michael Lorrey objects to the settlement on the grounds that it "appears to unfairly award set-up fees for some types of virtual property but not others," arguing that there is no reason why island set-up fees should be awarded without also awarding set-up fees for other types of virtual property, such as region set-up fees. (Lorrey Obj. 3.) He also argues generally that the settlement could have been better by providing different or additional relief, such as refunding Second Life account and transaction fees. (*See generally* Lorrey Obj.)

Lorrey cites no legal authority supporting his objection. That a settlement could potentially have reached a more favorable result for certain individuals in the class does not demonstrate that the settlement is not fair, adequate, and reasonable. *See Hanlon*, 150 F.3d at 1027 (the court's inquiry "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). However, his objection regarding the island set-up fee calls for greater scrutiny. As noted, the settlement agreement calls for payment of two Linden dollars per square meter of virtual land held by class members and refund of the $1,000 setup fee to the class member who possessed a virtual island (*see* Revised Agreement § 3.1(D)(3)), among other provisions. At the final approval hearing, class counsel confirmed that the only class member who will benefit from reimbursement of island set-up fees is Plaintiff Hemingway. The court expressed

7

concerns about the propriety of this provision, given that it appears to be a carve-out that grants preferential treatment to the class representative. Following the final approval hearing, class counsel submitted a declaration in which he stated that he was unaware that Plaintiff Hemingway "was the only Class Member who could benefit from reimbursement for island set-up fees" during the settlement negotiations. (Aschenbrener Decl., March 13, 2014, ¶ 4.) While the court finds it difficult to credit Class Counsel's statement, it also finds that denying approval to the entire settlement based on concerns about the island set-up fee provision is not in the class members' best interests, given the risks of litigation and possibility of lesser recovery if the parties are forced to conduct another round of negotiation. Further, this provision does not diminish or reduce the recovery available to class members. Had the court the power to do so, it would simply strike the provision in question; however, Ninth Circuit precedent is clear that courts are not "empowered to rewrite the settlement agreed upon by the parties. [Courts] may not delete, modify, or substitute certain provisions . . . [and] ultimately . . . must consider the proposal as a whole and as submitted." *Officers for Justice*, 688 F.2d at 630. The court will account for the fact that Plaintiff Hemingway's recovery under the settlement is enhanced by the island set-up fee refund by reducing the amount of her incentive award, as set forth below. Therefore, Mr. Lorrey's objection is overruled.

Having overruled the only objection received, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable." *See Officers for Justice*, 688 F.2d at 625; *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness" (citing *Hanlon*, 150 F.3d at 1026 (quotation marks omitted))). The court grants the settlement final approval.

### B. Attorneys' Fees and Plaintiff's Incentive Award

Along with her motion for final approval of the settlement of this matter, Plaintiff moves for an award of $175,000 in attorneys' fees and expenses and for a $10,000 incentive award. (Pl.'s Fee Mot.) Defendants do not object. [Docket No. 131 (Statement of Nonopposition).] As of January 23, 2014, the expenses advanced by class counsel total $19,574.86. (Archinaco Decl., Jan. 23, 2014,

¶ 13; Aschenbrener Decl., Jan. 23, 2014, ¶ 14; Chandler Decl., Jan. 22, 2014, ¶ 10.) Therefore, the $175,000 award requested by class counsel consists of $19,574.86 in costs and $155,425.14 in fees.

### 1.     Request for Attorneys' Fees and Costs

The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys' fees, depending on the case," *i.e.* the percentage method and the lodestar method. *Hanlon*, 150 F.3d at 1029. In common fund cases, a district court has discretion to award attorneys' fees under either the percentage or the lodestar method. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). However, the percentage of the fund is the typical method of calculating class fund fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (noting "the primary basis of the fee award remains the percentage method"). In common fund cases in the Ninth Circuit, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the usual range. *Id.* at 1047.

Arguably, this case does not involve a common fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003) (noting that, "[u]nder regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision" and that thereafter counsel for plaintiffs "apply to the court for a fee award from the fund"). Plaintiff's position on this is not clear. At one point, Plaintiff asserts that "in the absence of a common fund or where, as here, the Defendants agreed to pay attorneys' fees separate from the Class relief, the Court may apply either [the lodestar or percentage methods]." (Pl.'s Mot. 2.) Elsewhere, Plaintiff appears to take the position that this is a common fund case, setting forth the value of the proposed settlement fund and citing cases discussing so-called "constructive common funds." (Pl.'s Mot. 7-8, n.4.) *See Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (noting that where a settlement does not create a common fund from which to draw, courts may analyze the case as a "constructive common fund" for fee-setting purposes (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011))).

In any event, the parties agree that the court has discretion regarding whether to apply the percentage or lodestar method, and Plaintiff argues the $175,000 award for fees and costs should be approved as fair and reasonable under either method. As of January 23, 2014, class counsel have spent 909.2 hours litigating this matter, for a total lodestar of $349,229. (Archinaco Decl. ¶ 10;

9

Aschenbrener Decl. ¶ 10; Chandler Decl. ¶ 7.)  Plaintiff's request for $155,425.14 in attorneys' fees represents a negative multiplier of 0.45.  The Ninth Circuit has held that although "the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *In re Bluetooth*, 654 F.3d 941-42 (internal citation omitted) (citing *Hanlon*, 150 F.3d at 1029).  However, foremost among these considerations is the benefit obtained for the class.  *Id*.

The court will evaluate the requested fee under the percentage method and analyze the recovery obtained as a constructive common fund.  *See Vizcaino*, 290 F.3d at 1050 (the percentage of the fund is the typical method of calculating class fund fees).  To calculate appropriate attorneys' fees under the constructive common fund method, the court looks to the maximum settlement amount that could be claimed.  *Nwabueze*, 2013 WL 6199596, at *11.  This includes *all* funds available to eligible claimants, whether claimed or not.  *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (finding abuse of discretion where court based fee award on class members' claims against the fund rather than on percentage of the entire fund or on the lodestar).  It also includes attorneys' fees and class administration costs.  *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1146-47 (9th Cir. 2000) (discussing when class members have standing to appeal attorney fee award, noting that "the aggregate amount of the attorney fees and the class settlement payment may be viewed as 'a constructive common fund.'" (citation omitted)).  Plaintiff asserts that the value of the proposed settlement fund to the class is approximately $602,014.82, measured as follows:

1. Return of 100% of US Dollar balance to class members: $24,236.90
2. Return of 100% of Linden Dollar balance to class members: $171,973.46
3. Payment of 2 Linden Dollars per square meter of all virtual land held by eligible class members, plus $1,000 refund of the island set-up fee: $3,189.46

10

1      4.      Payment of at least $15 per class member whose account contains virtual items: $177,615

2      5.      Attorneys' fees and costs: $175,000

3      6.      Notice costs: up to $50,000

(Pl.'s Fee Mot. 7-8.) Accordingly, the requested fees ($155,425.14) total 25.8% of the entire settlement value received by the class. As noted, 25% of the recovery obtained is the benchmark in the Ninth Circuit. *Vizcaino*, 290 F.3d at 1047. The selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck. *Id*. at 1048-50.

This litigation posed significant risks. The issues litigated were novel and inherently risky, and Defendants vigorously litigated this action from its inception, partially defeating class certification. Moreover, the case was conducted on an entirely contingent fee basis, with class counsel assuming all of the financial risk of litigation. However, the court does not find that the result achieved and the quality of work by counsel weigh in favor of exceeding the 25% benchmark. In addition, the estimated value of the payments for virtual items ($177,615) is inflated, as Plaintiff simply multiplied the total number of email addresses by $15 without submitting any evidence to support this calculation, such as the number of class member accounts that actually contain virtual items. Therefore, the total value of the constructive common fund is almost certainly lower than Plaintiff's estimate of $602,014.82, and possibly significantly lower, meaning Plaintiff's requested fee is higher than 25.8% of the fund. Therefore, the court awards Plaintiff attorneys' fees in the amount of $150,503.71, or 25% of the constructive common fund. The lodestar crosscheck results in a negative multiplier of .43, which suggests that the percentage of the fund amount is reasonable and fair. *See Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013). In addition, the court awards class counsel $19,574.86 in costs incurred as of January 23, 2014. *See* Fed. R. Civ. P. 23(h); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement).

### 2. Request for Incentive Award

Plaintiff also requests an incentive award of $10,000 for Hemingway, which is double the amount which is presumptively reasonable in this District. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable."). Plaintiff attaches a declaration by Hemingway in which she describes her "substantial assistance" to class counsel. (Hemingway Decl., Jan. 23, 2014, ¶ 4.) She assisted class counsel by "answer[ing] questions, provid[ing] information and/or documents, verif[ying] the accuracy of certain allegations, and generally assist[ing] with the prosecution of the case." (Hemingway Decl. ¶ 8.) She also traveled from Georgia to San Francisco for her deposition, missing three days of work to do so. (Hemingway Decl. ¶¶ 10-12.) She did not attend the mediation but was available by telephone. (Hemingway Decl. ¶ 13.)

As noted, Hemingway's recovery under the settlement has already been enhanced by the $1,000 island set-up fee refund. Further, she has not provided any reasons why the court should depart from the presumptively-reasonable $5,000 incentive award in this case. While she states that she provided "substantial" assistance, she does not quantify any of the time she spent working on this case, other than stating that she missed three days of work to be deposed. Further, even though the claims period has not closed, Plaintiff has not provided any information regarding an estimate of the average value of claims for class members against which an incentive award of any amount could be measured, other than stating that "one claimant is entitled to receive $1,676.99 U.S. dollars" as a refund of the U.S. dollar balance in the member's account. (Pl.'s Suppl. Brief 7; Class Administrator Decl. II ¶ 50.) *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (considering "whether the incentive payments are proportional to the Settlement Amount."). The court does not find that Hemingway significantly contributed to achieving this result for class members. Accordingly, the court awards Hemingway an incentive payment of $1,000.

### III. Conclusion

For the reasons stated above, Plaintiff's motion for final approval of a class action settlement is granted. The court also awards Plaintiff $150,503.71 in attorneys' fees and $19,574.86 in litigation costs. Finally, the court awards Plaintiff Hemingway $1,000 as an incentive award.

IT IS SO ORDERED.

Dated: April 29, 2014



DONNA M. RYU
United States Magistrate Judge

13